UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MARK STEINES, et al.<br><br>Plaintiffs,<br><br>v.<br><br>CROWN MEDIA UNITED STATES, LLC, et al.<br><br>Defendants. | Case No.: CV 18-09293-CJC(FFMx)<br><br>ORDER DENYING PLAINTIFFS' MOTION TO REMAND [Dkt. 11], DENYING DEFENDANTS' MOTION TO DISMISS [Dkt. 9], AND DENYING DEFENDANTS' MOTION TO STRIKE [Dkt. 10] |

**I. INTRODUCTION**

Plaintiffs Mark Steines and Steines Entertainment, Inc. bring this action against Defendants Crown Media United States, LLC, Crown Media Holdings, Inc., Citi Teevee, LLC, and Does 1 through 100. (Dkt. 1-2 [First Amended Complaint, hereinafter "FAC"].) Plaintiffs assert claims for retaliation, wrongful discharge in violation of public

-1-

policy, failure to prevent retaliation, and breach of the implied covenant of good faith and fair dealing as a result of Steines' termination from his role as co-host of the Hallmark Channel's daytime lifestyle show "Home & Family." (*Id.* ¶¶ 1–2.) Steines was fired after he allegedly reported sexual harassment by an executive producer on the television show. (*Id.*) Before the Court are Plaintiffs' motion to remand and Defendants' motion to dismiss and motion to strike. (Dkts. 9–11.) For the following reasons, Plaintiffs' motion to remand is **DENIED**. Defendants' motion to dismiss and motion to strike are **DENIED**.[1]

## II. BACKGROUND

Defendants are entities associated with the Hallmark Channel. Defendant Crown Media United States, LLC ("Crown Media United States") is a corporation that is incorporated in Kansas. (FAC ¶ 5.) Defendant Crown Media Holdings ("CMH") is a holding company that is incorporated in Delaware. (*Id.* ¶ 6.) Defendant Citi Teevee, LLC ("Citi TeeVee") is a production company that is incorporated in Delaware. (*Id.* ¶ 7.) William Abbott is either the Chief Executive Officer or Principal Executive Officer of all three entities. (*Id.* ¶¶ 5–7.)

Plaintiff Mark Steines was the co-host of Hallmark Channel's Home & Family from May 2012 until his termination in May 2018. (*Id.* ¶ 3.) Plaintiff Steines Entertainment, Inc. is a California corporation that acts as the loan-out company for Steines. (*Id.* ¶ 4.)

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for December 10, 2018, at 1:30 p.m. is hereby vacated and off calendar.

Home & Family is a daytime, family-oriented lifestyle show that airs weekdays on the Hallmark Channel. (*Id.* ¶ 1.) Segments of Home & Family are taped before a live audience. (*Id.* ¶ 15.) The co-hosts and other members of the cast, known as "Family Members," participate in roundtable discussions and share tips on crafts, beauty, cooking, and fashion. (*Id.*) Defendants hired Steines to work as a co-host on the show in May 2012. (*Id.* ¶ 16.) The show debuted in October 2012. (*Id.* ¶ 17.)

The allegations here arise out of Defendants' response to Steines' complaints about Woody Fraser, the creator and longtime executive producer of Home & Family. (*Id.* ¶ 20.) Fraser allegedly bullied, verbally abused, and harassed cast and crew members, particularly female producers. (*Id.* ¶ 21.) While on set, Fraser allegedly made sexually inappropriate comments about female guests to Steines in his earpiece. (*Id.* ¶ 22.) For instance, Fraser allegedly asked Steines, "Can you see up her skirt (or down her skirt) from there?" and "Wouldn't you love to turn her around and bend her over and do her from behind?" (*Id.*) One time, Fraser purportedly approached Steines to tell him that Fraser's physician had told him he was so well-endowed that Fraser should have been a "porn star." (*Id.* ¶ 23.) In addition, Steines allegedly witnessed Fraser forcibly hug and massage a number of female employees. (*Id.* ¶ 24.)

According to the First Amended Complaint, cast and crew members of Home & Family regularly approached Steines with complaints about Fraser's behavior. (*Id.* ¶ 29.) Through his manager and talent agent, Steines made repeated complaints to Defendants' executives, but they did not take action. (*Id.*) In December 2016, Steines allegedly received an email sent by Fraser to a portion of the television crew. (*Id.* ¶ 31.) In the email, Fraser admitted anger management problems. (*Id.*) Through his manager, Steines forwarded the email to Defendants' executives. (*Id.*) Steines' talent agent also relayed Steines' complaint that Fraser had sexually harassed a female producer. (*Id.* ¶ 32.) In April 2017, a photo circulated around the Home & Family set that purportedly showed

Fraser grabbing the face of a young female producer and forcing a kiss on her lips. (*Id.* ¶ 25.) Steines texted this photo to his manager and his talent agent for them to forward to Defendants' executives. (*Id.*) Steines believed that Defendants would take action if they saw photographic evidence of Fraser's sexual harassment. (*Id.*)

In the spring of 2017, two female employees at Home & Family formally reported their claims of sexual harassment. (*Id.* ¶ 35.) Steines was contacted as a potential witness and he provided information to the female employees' attorney. (*Id.*) In June 2017, Steines and his entertainment law attorneys participated in a conference call with Defendants. (*Id.* ¶ 38.) Defendants apparently wanted to know what Steines had said to the employees' attorney. (*Id.*)

Shortly after the conference call, Steines learned that he was not invited to introduce the network's president and vice president at the Hallmark Channel's presentation for the Television Critics Association. (*Id.* ¶ 40.) Steines had made this introduction at the previous five events. (*Id.*) In July 2017, Defendants terminated Steines' regular voice-over work for the Hallmark Channel, without any explanation or notice. (*Id.* ¶ 41.) Around the same time, Defendants' representatives told Steines that they "needed" him to take a substantial pay cut, something the network had never previously requested in Steines' six previous years as co-host. (*Id.* ¶ 42.) Steines' salary was reduced to an amount even lower than what he was paid two years prior. (*Id.* ¶ 43.) Steines' co-host's salary remained unchanged. (*Id.* ¶ 44.) Defendants then let Steines' contract expire for the first time since 2012 and subsequently signed Steines to a single-season contract. (*Id.* ¶ 46.) On May 30, 2018, Defendants terminated Steines after a live show taping, despite three months remaining on his contract. (*Id.* ¶ 50.)

On September 20, 2018, Plaintiffs filed this action in Los Angeles County Superior Court. (Dkt. 1-1.) Defendants removed the case on October 30, 2018. (Dkt. 1.)

Plaintiffs allege causes of action for: (1) retaliation in violation of California Government Code § 12940, *et seq.*, (2) wrongful discharge in violation of public policy, (3) failure to prevent retaliation, and (4) breach of the implied covenant of good faith and fair dealing. (*See generally* FAC.)

## III. MOTION TO REMAND

As jurisdiction is a threshold issue, the Court first addresses Plaintiffs' motion to remand. A civil action brought in state court, but over which a federal court may exercise original jurisdiction, may be removed by the defendant to a federal district court. 28 U.S.C. § 1441(a). The burden of establishing subject matter jurisdiction falls on the defendant, and the removal statute is strictly construed against removal jurisdiction. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."). If at any time before final judgment, the court determines that it is without subject matter jurisdiction, the action shall be remanded to state court. 28 U.S.C. § 1447(c).

A federal court has diversity jurisdiction over a civil action between citizens of different states, so long as the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. A corporation is deemed to be a citizen of the state in which it has been incorporated and of the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is the corporation's "nerve center," or "the place where the corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). Typically, this is the place where a corporation maintains its headquarters. *Id.* at 93. Although a corporation may have several plants, many sales locations, and employees located in different places, the corporation's nerve center is a single place. *Id.* at 95. A limited liability company is a

citizen of every state of which its owners or members are citizens. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

Defendants removed this case on the basis of diversity jurisdiction. (Dkt. 1.) Both parties agree that the amount in controversy exceeds $75,000, as Steines' employment contract provided for $1,500,000 per year. (Dkt. 1-3 [Declaration of William J. Abbott, hereinafter "Abbott Decl. I"] ¶ 8.) Diversity jurisdiction therefore hinges on whether there is complete diversity between plaintiffs and defendants. Plaintiff Mark Steines is a California resident. (Dkt. 11-3 [Declaration of Mark Steines, hereinafter "Steines Decl."] ¶ 4.) Plaintiff Steines Entertainment Inc. is a California corporation that is wholly owned by Steines. (*Id.* ¶ 5.) Defendant Citi TeeVee is incorporated in Delaware. (Abbott Decl. I ¶ 7.) It is a limited liability company that is wholly owned by one member, Crown Media United States. (*Id.*) Defendant Crown Media United States is incorporated in Kansas. (Abbott Decl. I ¶ 5.) It is a limited liability company that is wholly owned by one member, CM Intermediary, LLC, a Delaware corporation that is wholly owned by CMH. (*Id.* ¶¶ 5–6.) Defendant CMH is incorporated in Delaware. (*Id.* ¶ 3.)

The parties dispute the location of CMH's principal place of business. Plaintiffs contend that CMH's principal place of business in California. Plaintiffs reference several SEC filings, which through 2016 listed CMH's principal executive offices as located in Studio City, California.[2] (Dkt. 12-1 Exs. 1–4.) Plaintiffs also refer to Defendants' most recent Statements of Information filed with the California Secretary of State, which lists the Studio City address as the principal executive office. (*Id.* Exs. 5–8.) In addition,

---

[2] Plaintiffs request that the Court take judicial notice of SEC filings by Crown Media Holdings and various filings with state government entities, including the California Secretary of State. (Dkts. 12, 21.) These documents are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2); *see also Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (stating publicly available financial documents are properly subject to judicial notice). Plaintiffs' request for judicial notice is GRANTED.

Plaintiffs submit an affidavit describing Steines' own experience at the company, including how he met with executives only at the Studio City office, received paychecks from California, and visited the CEO's office in Studio City. (Steines Decl. ¶¶ 10–19.)

Defendants, nevertheless, have met their burden of proving that their principal place of business is in New York. CMH's headquarters in in New York. (Abbott Decl. I ¶ 4.) In 2016, CMH was taken private by Hallmark Cards, Inc. (Dkt. 13-1 [Declaration of William J. Abbott, hereinafter "Abbott Decl. II"] ¶ 14.) Accordingly, since the 2016 SEC filings referenced by Plaintiffs, CMH has made numerous operational changes. (*Id.*) Defendants' CEO and President, William Abbott, testified that he directs, controls, and coordinates the Defendants' activities in New York. (Dkt. 13-1 [Declaration of William J. Abbott, hereinafter "Abbott Decl. II"] ¶ 6.) He spends at least 75% of his time operating out of the New York office, and he visits the other offices in Studio City and Kansas City, Missouri, a few days out of each month. (*Id.* ¶ 8.) When he conducts senior management meetings, the meetings are conducted via video and telephone conference among the executives from New York, Studio City, Denver, and Kansas City, and Abbott leads and conducts the meetings from his office in New York. (*Id.* ¶ 11.) Although the chief financial officer works out of the Studio City office, corporate policy-making and operations decisions are made in New York. (Dkt. 13-2 [Declaration of Andrew Rooke] ¶¶ 2–3.) There are 75 employees who work out of the New York office, including the chief executive officer, the executive vice president in charge of revenue management, the executive vice president of advertising and sales, and the executive vice president of marketing. (Abbott Decl. II ¶¶ 9–10.) The "vast majority" of CMH's revenue is from advertising sales that are generated out of the New York office. (*Id.* ¶ 6.) Accordingly, CMH's "nerve center" and principal place of business is in New York. Since Defendants

have established that they are not citizens of California, there is complete diversity. Plaintiffs' motion to remand is **DENIED**.[3]

## IV. MOTION TO DISMISS

### A. Legal Standard

Defendants move to dismiss the complaint for failure to state a claim. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). The district court may also consider additional facts in materials that the district court may take judicial notice, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994*), overruled in part on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

---

[3] Plaintiffs have also filed a number of evidentiary objections to documents that Defendants attached as part of their opposition to Plaintiffs' motion to remand. (Dkt. 20.) As the Court has not relied on this evidence, it is not necessary for the Court to rule on those objections.

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted)). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

### B.     Analysis

#### 1.     Employment Relationship

As a threshold issue, Defendants move to dismiss Plaintiffs' claims for retaliation, wrongful termination, and failure to prevent retaliation on the ground that Steines has failed to allege that he was employed by Defendants. Under California law, it is unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h). By prohibiting only "an employer" from engaging in improper discrimination, "[t]he FEHA predicates liability on the status of the defendant as an 'employer.'" *Vernon v. State*, 116 Cal. App. 4th 114, 123 (2004) (quoting *Kelly v. Methodist Hosp. of S. Cal.*, 22 Cal. 4th 1108, 1116 (2000)) (internal quotation marks omitted). The "FEHA requires some connection with an employment relationship, although the connection need not necessarily be direct." *Id.* (quoting *Lutcher v.*

*Musicians Union Local 47*, 633 F.2d 880, 883 (9th Cir. 1980)). This follows FEHA's mandate to construe its provisions liberally. *See* Cal. Gov't Code § 12993(a).

Courts look to the "totality of circumstances" to determine the existence of an employer/employee relationship. *Vernon*, 116 Cal. App. 4th at 124. Relevant factors include the payment of employment benefits; the defendant's authority to hire, transfer, promote, discipline, or discharge the employee; the defendant's discretion to determine the amount of compensation earned by the employee; and the duration of the relationship of the parties. *Id.* at 125. "Of these factors, the extent of the defendant's right to control the means and manner of the workers' performance is most important." *Id.* at 126 (quoting *Lee v. Mobile Cty. Comm'n*, 954 F. Supp. 1540, 1546 (S.D. Ala. 1995), *aff'd*, 103 F.3d 148 (11th Cir. 1996)).

In the First Amended Complaint, Plaintiffs allege that Steines was employed by Defendants as the co-host of Hallmark & Family from May 29, 2012 through May 30, 2018. (FAC ¶¶ 3, 15–16, 50.) Defendants jointly employed Steines and "exercised direction and control over his job performance and working conditions." (*Id.* ¶ 10.) For instance, Steines had to ask for vacation time from Defendants. (*See id.* ¶¶ 26, 46.) He cancelled his honeymoon to fulfill obligations to Defendants. (*See id.* ¶ 34.) These facts plausibly allege an employer/employee relationship between Steines and Defendants, since Defendants allegedly controlled the means and manner of Steines' employment.

Defendants argue that the First Amended Complaint fails to allege a plausible claim that Defendants are "joint employers," such that they should be treated as the same entity. The Court disagrees. Plaintiffs allege that all three companies have the same chief executive officer, William Abbott. (*Id.* ¶¶ 5–7.) Plaintiffs further allege that Abbott was Steines' supervisor. (*Id.* ¶ 59.) Plaintiffs do not need to allege the corporate

structure or relationship of the entities, as Plaintiffs allege sufficient facts to put Defendants on notice of their claims. *Cf.* Fed. R. Civ. P. 8(a)(2).

Defendants also ask this Court to refer to a contract between Steines Entertainment, Inc. and Citi TeeVee. Defendants attached the contract to the declaration submitted by Abbott, their CEO, in support of the case's removal to federal court. (Dkt. 1-3 Ex. 1.) They argue that Plaintiffs incorporated the contract by reference in their First Amended Complaint. (Dkt. 17 [Defs.' Reply to Pls.' Opp'n to Mot. to Dismiss] at 3 n.2.) Plaintiffs assert that Defendants' attachment is procedurally improper and not a proper basis for this Court's decision on a Rule 12(b)(6) motion to dismiss. (Dkt. 16 [Evidentiary Objections].) Plaintiffs do not appear to dispute the authenticity of the contract. However, the First Amended Complaint does not specifically reference the contract between Steines Entertainment, Inc. and Citi TeeVee with respect to the FEHA claims. (*See* FAC ¶¶ 56–98; *but see id.* ¶ 16, 45–47 [contract specifically referenced as part of implied covenant claim]). Since the Court's inquiry is limited to the four corners of the First Amended Complaint, the Court declines to consider the Defendants' attached contract. *Cf. Branch*, 14 F.3d at 454 (holding court may consider documents not physically attached to the pleading when the complaint specifically refers to the document). And in any case, any contractual language limiting Steines' status as an employee does not foreclose an employer/employee relationship under the FEHA, which does not require a "direct relationship" and looks to the "totality of circumstances." *See Vernon*, 116 Cal. App. 4th at 123–24.

### 2. Retaliation

Plaintiff's first cause of action is for retaliation. To establish a prima facie case of retaliation under the FEHA, the plaintiff must show (1) he engaged in a protected activity, (2) his employer subjected him to adverse employment action, and (3) there is a

causal link between the protected activity and the employer's action. *Yanowitz v. L'Oreal USA, Inc.*, 26 Cal. 4th 1028, 1065–66 (2005).

Defendants also contend that the First Amended Complaint fails to allege that Steines engaged in any protected activity. The range of protected activities is "wide," but typically "involves some level of opposition to the employer's actions based on the employee's reasonable belief that some act or practice of the employer is unlawful." *Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1144 (E.D. Cal. 2010). "The protected activity element may be established by evidence that the plaintiff threatened to file a discrimination charge, by a showing that the plaintiff mistakenly, but reasonably and sincerely believed he was opposing discrimination, or by evidence that an employer believed the plaintiff was a potential witness in another employee's FEHA action." *Rope v. Auto-Chlor Sys. of Wash., Inc.*, 220 Cal. App. 4th 635, 652 (2013), *superseded by statute on other grounds as discussed in Moore v. Regents of the Univ. of Cal.*, 248 Cal. App. 4th 216, 245 (2016) (citations omitted).

The First Amended Complaint adequately alleges that Steines engaged in protected activity. There are numerous factual allegations regarding the supposed sexual harassment and gender discrimination on Home & Family's set. Steines allegedly witnessed Fraser berate female producers, make sexually lewd comments on set, and forcibly hug, kiss, and massage female employees. (FAC ¶¶ 21–27.) Steines purportedly complained about this unlawful activity to his representatives and demanded that the network take appropriate action. (*Id.* ¶ 29.) In spring 2017, Steines was contacted by an attorney as a potential witness for two women who had formally reported claims of sexual harassment. (*Id.* ¶ 35.) Defendants were also apparently aware of this cooperation, as they organized a phone call with Steines in June 2017 to find out what he said to the attorney. (*Id.* ¶ 38.)

Defendants argue that Plaintiffs fail to allege retaliation because Steines made most of his complaints to Defendants through his representatives, such as his manager or talent agent. But Defendants cite no law for their assertion that anti-retaliation laws require that "one must personally engage in the protected activity," rather than make a complaint through a chain of communication. (*See* Dkt. 9 [Defs.' Mot. to Dismiss] at 11; *see also* Dkt. 17 [Defs.' Reply to Pls.' Opp'n to Mot. to Dismiss] at 4–5.) Even if communicated through a talent agent or manager, Steines initiated the process of making the complaint and Defendants could attribute the complaints to him. Steines allegedly forwarded an email regarding Fraser's behavior to his manager, which was in turn forwarded to Defendants' executives. (FAC ¶ 31.) Steines' talent manager allegedly relayed Steines' complaint to Defendants' executives that a female producer had been sexually harassed. (*Id.* ¶ 32.) And Steines directly and voluntarily participated as a potential witness in other employees' sexual harassment claims by allegedly providing information to the employees' attorney. (*Id.* ¶ 35.)

Defendants also argue that Plaintiffs fail to allege that Defendants subjected Steines to adverse employment action. An adverse employment action requires a "substantial adverse change in the terms and conditions of the plaintiff's employment." *Holmes v. Petrovich Dev. Co.*, 191 Cal. App. 4th 1047, 1063 (2011). A "mere offensive utterance" or "pattern of social slights" is not enough, *Yanowitz*, 36 Cal. 4th at 1054, but "a series of alleged discriminatory acts must be considered collectively rather than individually in determining whether the overall employment action is adverse," *Jones v. Dep't of Corr. & Rehab.*, 152 Cal. App. 4th 1367, 1381 (2007). Here, Plaintiffs adequately allege adverse employment action. In June 2017, Steines was not invited to make an introduction for the Hallmark Channel at an important industry event, despite doing so the past five years. (FAC ¶ 40.) His voice-over work was terminated around the same time. (*Id.* ¶ 41.) He was asked to take a pay cut, and later took a reduced salary. (*Id.* ¶¶ 42, 47.) He was offered only a single season contract, whereas previously

he had been offered multi-season contracts. (*Id.* ¶ 47.) He was not invited to the Upfronts, where he had previously hosted Hallmark's presentation before advertisement buyers. (*Id.* ¶ 49.) Eventually, he was terminated. (*Id.* ¶ 50.) Together, these allegations plausibly establish adverse employment action.

Lastly, Defendants assert that the First Amended Complaint fails to allege a causal link between the alleged protected activity and the alleged adverse action. Causation is ordinarily a question of fact. *See Nichols v. Keller*, 15 Cal. App. 4th 1672, 1687 (1993). "A long period between an employer's adverse employment action and the employee's earlier protected activity may lead to the inference that the two events are not causally connected." *Wysinger v. Auto. Club of S. Cal.*, 157 Cal. App. 4th 413, 421 (2007). However, "if between these events the employer engages in a pattern of conduct consistent with a retaliatory intent, there may be a causal connection." *Id.* (holding jury could find a causal connection, despite a four-year gap between the protected activity and the adverse action, where the employee was treated with "coldness" and not invited to serve on management committees or apply for management positions). Plaintiffs here adequately allege a causal connection. As described above, Plaintiffs allege a pattern of retaliatory conduct between the time Steines assisted with the other employees' FEHA action and the time he was terminated. (*See* FAC ¶¶ 40–50.)

### 3.     **Wrongful Termination & Failure to Prevent Retaliation**

Defendants seek to dismiss Plaintiffs' claims for wrongful termination and failure to prevent retaliation on the same grounds that they moved to dismiss Plaintiffs' claims for retaliation. A discharged employee may bring a tort action for wrongful termination where the discharge violated fundamental principles of public policy. *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 170 (1980). Violations of provisions of FEHA give rise to a tort action for wrongful termination. *See City of Moorpark v. Superior Court*, 18 Cal.

4th 1143, 1159–60 (1998). Similarly, a claim for failure to prevent retaliation depends on an underlying claim for retaliation. *See Trujillo v. N. Cty. Transit Dist.*, 63 Cal. App. 4th 280, 288–89 (1998). As discussed above, Plaintiffs have alleged a valid claim for retaliation, so their claims for wrongful termination and failure to prevent retaliation still stand.

### 4. Breach of Implied Covenant

Plaintiffs' fourth claim is for breach of the implied covenant of good faith and fair dealing. The covenant of good faith and fair dealing is implied in every contract and prevents one party from "unfairly frustrating the other party's right to receive the benefits" of the contract. *See Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000). Breach of a specific provision of the contract is not necessary, but the "scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992).

Defendants argue that the Court should dismiss Plaintiffs' implied covenant claim because they failed to attach the contract to the complaint or reference it verbatim. The Court is unpersuaded that there is any requirement to attach the actual contract or quote it entirely. Defendants' cited case is unavailing, as *Otworth* simply involved the requirement that a plaintiff must allege the terms of the contract in order to state a cause of action for breach of contract. *See Otworth v. S. Pac. Transp. Co.*, 166 Cal. App. 3d 452, 459 (1985). Plaintiffs here allege the existence of a series of contracts from 2012 to 2017 that involved Steines' employment on Home & Family. (FAC ¶¶ 101–09.) The First Amended Complaint describes the parties, relevant dates, relevant terms, and performance of these contracts. (*Id.*) Plaintiffs sufficiently allege the existence of a contract.

Defendants also argue that the First Amended Complaint fails to allege that Steines, Crown Media United States, or CMH are parties to the contract. With respect to Steines, the First Amended Complaint alleges Steines himself entered into a contract with Citi TeeVee. (FAC ¶ 109.) In addition, a third party may enforce a contract when the contract was made expressly for the benefit of the third party. Cal. Civ. Code § 1559; *see Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 524 (2002). A third party's rights under a contract are predicated upon the contracting parties' intent to benefit it. *Id.* (quoting *Garcia v. Truck Ins. Exch.*, 36 Cal. 3d 426, 436 (1984)). Here, the underlying contract was allegedly made for Steines' express benefit, as the contract involved his employment as co-host of Home & Family.

Regarding Crown Media United States and CMH's standing to sue as parties to the contract, undisclosed principals may become parties to a contract into which an agent enters on the principals' behalf. Cal. Civ. Code § 2295; *Thayer v. Pac. Elec. Ry. Co.*, 55 Cal. 2d 430, 438 (1940); Restatement (Third) of Agency §§ 6.02, 6.03 (2006). Plaintiffs allege that Crown Media United States and CMH are integrated enterprises, along with co-defendant Citi TeeVee, who is a signatory to the contract. (FAC ¶¶ 10, 109.) Plaintiffs further allege that Citi TeeVee is a production subsidiary of Crown Media United States, (*id.* ¶ 106), and that Crown Media United States is a wholly-owned subsidiary of CMH, (*id.* ¶ 102). These facts plausibly allege that Citi TeeVee entered into the contracts as an agent on behalf of Crown Media United States and CMH.

Lastly, Defendants argue that Plaintiffs fail to allege a breach of the implied covenant. Defendants' argument, however, is primarily based on information outside of the First Amended Complaint, such as the assertion that Steines continued to be paid after his termination. The First Amended Complaint alleges that the 2015 Amendment to the 2012 Contract provided that Steines' contract could be renewed through Season 6, with a guaranteed raise for each renewal. (*Id.* ¶ 107.) Defendants, however, let Steines'

contract expire, without renewal, and then entered into a new contract in May 2017. (*Id.* ¶ 108.) This prevented Steines "from receiving the substantial benefit of the [2015 Amendment's] guaranteed salary increase for Season 6." (*Id.*) In addition, Plaintiffs allege that Defendants unfairly interfered with their rights under the contract by terminating Steines, without notice, in retaliation for reporting and opposing sexual harassment on the Home & Family set. (*Id.* ¶ 110.) These factual allegations plausibly allege a breach of the implied covenant of good faith and fair dealing.

### 5. Punitive Damages

Defendants seek to dismiss Plaintiffs' claim for punitive damages. California law provides for an award of punitive damages where Defendants' actions are malicious or oppressive. Cal. Civ. Code § 3294(a). Malice means "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Id.* § 3294(c)(1). Oppression means "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.* § 3294(c)(2). An employer is liable for punitive damages based on an employee's conduct where the employer has authorized or ratified the wrongful conduct or was personally guilty of malice or oppression. *Id.* § 3294(b). With respect to a corporate employer, the malice or oppression must be on the part of an officer, director, or managing agent of the corporation. *Id.*

Plaintiffs state a plausible claim for punitive damages based on the allegations in the First Amended Complaint. Plaintiffs allege that Abbott, Defendants' CEO, and Michelle Vicary, Defendants' executive vice president, were informed about Fraser's inappropriate behavior and misconduct. (FAC ¶¶ 31, 32.) Defendants allegedly failed to act and took retaliatory conduct against Steines after he reported the misconduct and

assisted other employees in their sexual harassment lawsuit. (*See id.* ¶¶ 39–55.) Accordingly, Defendants' motion to dismiss is **DENIED**.

**V. MOTION TO STRIKE**

Defendants move to strike various aspects of Plaintiffs' First Amended Complaint. Pursuant to Federal Rule of Civil Procedure 12(f), the court may strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). However, motions to strike are typically viewed with disfavor because they are often used for purposes of delay, and because of the strong judicial policy favoring resolution on the merits. *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005). In reviewing a motion to strike, the court must view the pleadings under attack in the light most favorable to the pleader. *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 669 (C.D. Cal. 2000). "If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). Here, Defendants seek to strike (1) all references to Fraser's alleged behavior that Steines did not complain about or report to Defendants, (2) all references to Steines' allegations of entitlement to attorneys' fees, and (3) all references to "Doe" defendants. (Dkt. 11 [Defs.' Mot. to Strike] at 2–3.)

Defendants first seek to strike Plaintiffs' allegations about Fraser's behavior that that Steines did not report to Defendants. On this basis, Defendants seek to strike thirteen different portions of the First Amended Complaint, including that Fraser made "sexual inappropriate" comments while on set and that Steines witnessed Fraser "forcibly hug"

and "massage" a number of female employees. (*See id.* at 5–6.) The Court declines to strike these statements as they clearly bear on issues at stake in the litigation. These allegations go to Steines' awareness of sexual harassment and gender discrimination on Home & Family's set, about which he made several complaints to Defendants' executives. (*See* FAC ¶¶ 31–32.) These allegations also provide foundation for the assistance that Steines provided as a potential witness in the female employees' FEHA action. (*See id.* ¶¶ 35–38.) Striking these allegations is an improper use of Rule 12(f).

Defendants also seek to strike Plaintiffs' allegations that they are entitled to attorneys' fees under California Civil Procedure Code § 1021.5. Defendants argue that Plaintiffs fail to allege that the litigation serves to vindicate an important public right. *See* Cal. Civ. Proc. Code § 1021.5 (permitting award of attorneys' fees in certain circumstances in an action "that has resulted in the enforcement of an important right affecting the public interest"). Yet Defendants cite no cases that this is a proper ground to strike under Rule 12(f). In fact, courts have held otherwise. *See Perez v. Auto Tech. Co.*, 2014 WL 12591254, at *3 (C.D. Cal. Feb. 4, 2014) (declining to strike prayer for attorneys' fees on ground there was no legal basis for recovering fees because this was not a permissible basis to strike under Rule 12(f)); *Won Kyung Hwang v. Ohso Clean, Inc.*, 2013 WL 1632697, at *22 (N.D. Cal. Apr. 16, 2013) (declining to strike request for punitive damages). The Court declines to strike Defendants' prayer for attorneys' fees, as it is not an insufficient defense, redundant, immaterial, impertinent, or scandalous. *Cf. Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir. 2010) (holding Rule 12(f) does not authorize district courts to strike claims for damages on the grounds that such claims are precluded as a matter of law, because this is not one of the five permissible grounds to strike).

Finally, Defendants seek to strike all references to "Doe" defendants in the First Amended Complaint. Defendants cite to *Gillespie*, where the Ninth Circuit noted that the

use of Doe defendants is "not favored." *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Contrary to Defendants' assertion, however, *Gillespie* did not bar the use of Doe defendants under federal pleading rules. Indeed, *Gillespie* required that the plaintiff be given an opportunity through discovery to identify the unknown defendants. *Id.* at 642. Defendants fail to establish that their request otherwise falls into one of the permissible categories to strike material under Rule 12(f). Accordingly, Defendants' motion to strike is **DENIED**.

**VI. CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to remand is **DENIED**, Defendants' motion to dismiss is **DENIED**, and Defendants' motion to strike is **DENIED**.

DATED: December 4, 2018

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE