TIMOTHY J. LONG (STATE BAR NO. 137591)
tjlong@orrick.com
MICHAEL WERTHEIM (STATE BAR NO. 291228)
mwertheim@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA  90017-5855
Telephone:  +1 213 629 2020
Facsimile:  +1 213 612 2499

Attorneys for Defendants
CROWN MEDIA UNITED STATES, LLC, CROWN
MEDIA HOLDINGS, INC. AND CITI TEEVEE, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MARK STEINES AND STEINES ENTERTAINMENT, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>CROWN MEDIA UNITED STATES, LLC, CROWN MEDIA HOLDINGS, INC. AND CITI TEEVEE, LLC,<br><br>Defendants. | Case No. 2:18-cv-09293-CJC-FFM<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL**<br><br>[*Filed concurrently with Declaration of Declaration of Howard M. Knee (conditionally under seal), Declaration of Deanne R. Stedem (conditionally under seal), Declaration of Michael Wertheim, and [Proposed] Order Granting Motion to Disqualify*]<br><br>Date:    January 7, 2019<br>Time:    1:30 p.m.<br>Dept:    Courtroom 7C<br>Judge:   Honorable Cormac J. Carney<br><br>Date Action Filed: September 20, 2018<br>First Amended Complaint: September 26, 2018 |

**TO THE HONORABLE COURT AND PLAINTIFFS' AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 7, 2019 at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 7C of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California, 90012, Defendants Crown Media Holdings, Inc., Crown Media United States, LLC and Citi TeeVee, LLC ("Defendants") will, and hereby do, move this Court for an order disqualifying The Bloom Firm, and all of its attorneys, from representing Plaintiffs Mark Steines and Steines Entertainment, Inc. in this matter.

This motion arises because Defendants retained The Bloom Firm, and that representation prevents The Bloom Firm from pursuing this adverse representation against Defendants.  Defendants have not waived the conflict of interest and despite Defendants' request for The Bloom Firm to withdraw as counsel, The Bloom Firm has refused.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declarations of Howard M. Knee (filed conditionally under seal), Deanne R. Stedem (filed conditionally under seal) and Michael Wertheim, the pleadings and records on file herein, and such other evidence and argument as may be presented to the Court at or prior to the hearing on the Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on November 2, 2018.

1   Dated:      December 5, 2018           TIMOTHY J. LONG

2                                           MICHAEL WERTHEIM
                                          Orrick, Herrington & Sutcliffe LLP

3

4                                         By:*/s/ Timothy J. Long*

5                                               TIMOTHY J. LONG
                                             Attorneys for Defendants

6                                           CROWN MEDIA UNITED
                                        STATES, LLC, CROWN MEDIA

7                                           HOLDINGS INC., AND CITI
                                        TEEVEE LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISQUALIFY
CASE NO. 2:18-CV-09293-CJC-FFM

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................. 1

II.    STATEMENT OF FACTS .................................................................. 2

    A.     The Legal Services Agreement ............................................... 2

    B.     The LCA Established An Attorney-Client Relationship Between Defendants And The Bloom Firm ............................................... 4

    C.     The Bloom Firm Obtained Confidential Information About Defendants Directly Related To Plaintiffs' Case ................................. 5

III.   ARGUMENT ......................................................................................... 6

    A.     The Legal Standard .................................................................. 6

    B.     The CRPC Prohibits The Bloom Firm From Taking An Adverse Position To Its Current Or Former Clients ............................................. 7

        1.     The Court Must Automatically Disqualify The Bloom Firm ................................................................................... 7

        2.     Even If Defendants Are Considered Former Clients, Disqualification Is Warranted .................................................. 10

            a.     This Action Is Substantially Related To The Bloom Firm's Prior Representation of Defendants .................... 11

            b.     The Bloom Firm Must Be Disqualified Because It Obtained Confidential Information Related To This Case ................................................................................. 12

        3.     Knowledge of Defendants' "Playbook" And Strategies Gives Plaintiffs' An Unfair Advantage ..................................... 15

    C.     Even Absent An Attorney-Client Relationship, The Bloom Firm Must Be Disqualified ................................................................. 16

    D.     The Case Is In Its Early Stages, So Plaintiffs Will Not Suffer Any Undue Burden or Prejudice ............................................... 17

IV.   CONCLUSION ................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*California Earthquake Auth. v. Metro. W. Sec., LLC*,
  712 F. Supp. 2d 1124 (E.D. Cal. 2010) 1127-28 ............................................. 9, 11

*Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*,
  264 F. Supp. 2d 914 (N.D. Cal. 2003) ................................................................... 7

*In re Cty. of L.A.*,
  223 F.3d 990 (9th Cir. 2000) .................................................................................. 6

*Elan Transdermal v. Cygnus Therapeutic Sys.*,
  809 F. Supp. 1383 (N.D. Cal. 1992) .......................................................... 11, 14, 15

*Image Technical Servs. Inc. v. Eastman Kodak Co.*,
  820 F. Supp. 1212 (N.D. Cal. 1993) .................................................................... 17

*LeapFrog Enterprises, Inc. v. Epik Learning, LLC*,
  No. 16-CV-04269-EDL, 2017 WL 2986604 (N.D. Cal. Feb. 23,
  2017) .................................................................................................................... 16

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
  No. C 07-03752 JSW, 2007 WL 3203056 (N.D. Cal. Oct. 29, 2007) ............... 16

*Morrison & Foerster LLP v. Momentous.ca Corp.*,
  No. C–07–6361 EMC, 2008 WL 648481 (N.D. Cal. March 5, 2008) ............... 11

*Olam v Congress Mort. Co.*,
  68 F. Supp. 2d 1110 (N.D. Cal. 1999) ................................................................. 14

*Poly Software Intern., Inc. v. Su*,
  880 F. Supp. 1487 (D. Utah 1995) ....................................................................... 13

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .................................................................................. 6

*Trone v. Smith*,
  621 F.2d 994 (9th Cir. 1980) .................................................................................. 6

**State Cases**

*Banning Ranch Conservancy v. Superior Court,*
193 Cal. App. 4th 903 (2011) .................................................................... 9

*Benasra v. Mitchell Silberberg & Knupp LLP,*
123 Cal. App. 4th 1179 (2004) review denied ............................... 14, 15

*Cho v. Superior Court,*
39 Cal. App. 4th 113 (1995) ..................................................... 13

*Civil Service Comm'n v. Superior Court,*
163 Cal. App. 3d 70 (1984) .................................................... 14

*In re Complex Asbestos Litig.,*
232 Cal. App. 3d 572 (1991) .................................................. 18

*David Welch Co. v. Erskine & Tully,*
203 Cal. App. 3d 884 (1988) .................................................. 14

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.,*
20 Cal. 4th 1135 (1999) .............................................. 6, 10, 16

*People ex rel. Deukmejian v. Brown,*
29 Cal. 3d 150 (1981) ........................................................... 10

*Flatt v. Superior Court,*
9 Cal. 4th 275 (1994) ......................................................... 7, 9

*H.F. Ahmanson & Co. v. Salomon Bros.,*
229 Cal. App. 3d 1445 (1991) .............................................. 11

*Henriksen v. Great American Savings & Loan,*
11 Cal. App. 4th 109 (1992) ................................................ 17

*Nevarez v. Foster Farms,*
No. F070316, 2016 WL 1020758 (Cal. Ct. App. Mar. 15, 2016),
reh'g denied (Apr. 6, 2016) ................................................ 13

*Oasis West Realty, LLC v. Goldman,*
51 Cal. 4th 811 (2011) ......................................................... 10

*River West, Inc. v. Nickel,*
188 Cal. App. 3d 1297 (1987) ........................................ 17, 18

DEFENDANTS' MOTION TO DISQUALIFY
CASE NO. 2:18-CV-09293-CJC-FFM

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*,
   6 Cal. 5th 59, 84 (2018) ................................................................................ 7

*State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*,
   72 Cal. App. 4th 1425 (1999) ...................................................................... 8

**State Statutes**

Bus. & Prof. Code § 6068(e) ........................................................................ 10

Cal. Evid. Code § 1119(c) ............................................................................ 14

**Rules**

C.D. Cal. L.R. 83-3.1.2 ................................................................................... 6

California Rules of Professional Conduct, Rule 1.6 .................................... 10, 12, 16

California Rules of Professional Conduct, Rule 1.7(a), (b) ........................ 7

California Rules of Professional Conduct, Rule 1.9 .................................... 10, 12

California Rules of Professional Conduct, Rule 1.18 .................................. 16

California Rules of Professional Conduct, Rule 26 ..................................... 18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    <u>INTRODUCTION</u>

Defendants Crown Media United States, LLC, Crown Media Holdings, Inc. and Citi TeeVee, LLC ("Defendants") hereby move for an order disqualifying the The Bloom Firm and its attorneys from representing Plaintiffs Mark Steines ("Steines") and Steines Entertainment, Inc. ("SEI") (collectively "Plaintiffs") in this lawsuit.  This motion arises because The Bloom Firm entered into an attorney-client relationship with the Defendants.  The Bloom Firm's representation of Plaintiffs creates an irreconcilable conflict of interest and violates the California Rules of Professional Conduct.

In July 2017, after obtaining confidential information regarding the operations, strategy and personnel issues on the show Home & Family, The Bloom Firm entered into a Legal Consulting Agreement ("LCA") with Woody Fraser Enterprises, Inc. and Woody Fraser (collectively the "Fraser Parties") and Defendants (as explicit third-party beneficiaries).  Pursuant to the LCA, The Bloom Firm agreed to provide legal services for a specified period, in exchange for a substantial Consulting Fee, which The Bloom Firm negotiated for and insisted upon.  The LCA expressly created a binding attorney-client relationship between The Bloom Firm and Defendants.

In June 2018, after accepting and depositing the first installment payment for the LCA, and just one year into the LCA term, The Bloom Firm attempted to unilaterally withdraw from the LCA.  As discussed in detail below, it is unquestionable The Bloom Firm did so in order to represent Plaintiffs (its new clients) against Defendants (its then-clients) in this lawsuit.  Defendants immediately requested that The Bloom Firm not take any actions adverse to them and made clear they would not waive the obvious conflict of interest. Notwithstanding Defendants' opposition, The Bloom Firm proceeded to file this lawsuit against Defendants and refused to withdraw as counsel.

1    The conflict rules in California are abundantly clear: because of The Bloom
2  Firm's attorney-client relationship with Defendants, The Bloom Firm must be
3  automatically disqualified from representing Plaintiffs in this matter.  It is
4  axiomatic that an attorney cannot simultaneously represent two clients against one
5  another.  And even if the Court were to find that The Bloom Firm lawfully
6  terminated the LCA prior to representing Plaintiffs, The Bloom Firm must still be
7  disqualified because it owes a continuing duty of loyalty and confidentiality to
8  Defendants as former clients.  Again, it is axiomatic that in order to maintain the
9  high character of the attorney-client relationship, an attorney is forbidden to do
10  either of two things after severing her relationship with a former client: (1) anything
11  that will injuriously affect her former client in any matter in which she formerly
12  represented them, and (2) at any time use a client's confidential information against
13  that client.  Because of The Bloom Firm's intimate knowledge of Defendants'
14  confidential facts that are directly related to Plaintiffs' current lawsuit, The Bloom
15  Firm must be disqualified.

16    The Bloom Firm's representation of Plaintiffs in this case is at odds with the
17  basic principles of the attorney-client relationship, violates several ethical and
18  professional conduct rules and is manifestly unjust and prejudicial to Defendants.
19  After having negotiated for and enjoyed the benefits of the LCA, The Bloom Firm
20  cannot now try to walk away from its obligations as counsel to Defendants.
21  Therefore, Defendants respectfully request that the Court grant their motion and
22  disqualify The Bloom Firm from participating further in this action.

23  **II.    STATEMENT OF FACTS**
24      **A.    The Legal Services Agreement**
25    In July 2017, The Bloom Firm entered into the LCA with the Fraser Parties.
26  Declaration of Howard M. Knee ("Knee Decl.") ¶3, Exh. A; Declaration of Deanne
27
28

DEFENDANTS' MOTION TO DISQUALIFY
CASE NO. 2:18-CV-09293-CJC-FFM

Stedem ("Stedem Decl.") ¶3.[1]  The Bloom Firm specifically agreed that Crown Media United States, LLC and its affiliated entities (which include Defendants Citi TeeVee, LLC and Crown Media Holdings, Inc.) were, and are, third party beneficiaries of the LCA.  Stedem Decl. ¶5; LCA ¶ 11.  The parties entered into this LCA following a number of confidential communications with Ms. Bloom and attorneys from her firm.  Knee Decl. ¶¶3, 6, 7; Stedem Decl. ¶18, 19.  Per the LCA, The Bloom Firm was retained in good faith and at arms' length to provide the Fraser Parties and Defendants legal consulting services for a specified term.  Knee Decl. ¶¶4, 8; Knee Decl, ¶4; LCA, ¶¶1, 2.  The Bloom Firm acknowledged and agreed that the LCA created an attorney-client relationship for the term of the LCA between The Bloom Firm and all its attorneys (including Lisa Bloom, Alyson Decker and Vanessa Hooker), and the Fraser Parties and Crown Media United States, LLC and any of its affiliated or related entities.  Stedem Decl. ¶7; LCA ¶6.  The Bloom Firm voluntarily, and without coercion, negotiated, signed and agreed to the LCA.  Stedem Decl.¶4; Knee Decl. ¶4.

In consideration of the LCA, The Bloom Firm insisted upon a Consulting Fee, payable in three installment payments.  Knee Decl. ¶10, Exh. B; Stedem Decl. ¶10; LCA, ¶5(a).  On or about September 8, 2017, The Bloom Firm was sent a check for the first installment payment pursuant to the LCA, which was accepted and deposited by The Bloom Firm on September 18, 2017.  Knee Decl. ¶9, Exh. B; Stedem Decl. ¶11.  The second installment payment to The Bloom Firm was due on June 30, 2018.  Knee Decl. ¶10.

For almost a year, Defendants did not have occasion to use The Bloom Firm's services.  Stedem Decl. ¶12.  The timing of events here is important, because on May 30, 2018, Steines was removed from Home & Family.  Plaintiffs' First Amended Complaint, Dkt. No. 1, Exh. B. ¶50.  Just two weeks later, on June

---

[1] Defendants have filed a redacted version of the LCA and the declarations of Mr. Knee and Ms. Stedem to protect confidential information.  Defendants have filed an unredacted version with the Court as part of its Application for Leave to File Under Seal, concurrently filed herewith.

DEFENDANTS' MOTION TO DISQUALIFY
CASE NO. 2:18-CV-09293-CJC-FFM

13, 2018, seemingly out of nowhere, Ms. Bloom sent a letter purporting to unilaterally terminate the LCA and asking that the second installment payment not be sent.  Stedem Decl. ¶14, Exh. A.  Prior to June 13, 2018, neither Defendants nor their counsel, received any communication from The Bloom Firm to suggest that The Bloom Firm no longer considered the three-year LCA valid or enforceable. Stedem Decl. ¶15, Knee Decl. ¶11; Declaration of Michael Wertheim ("Wertheim Decl.") ¶3.

On June 29, 2018, Defendants' counsel communicated to The Bloom Firm that Defendants continued to view the LCA as legitimate, binding and enforceable, and requested that The Bloom Firm not take any actions adverse to Defendants. Wertheim Decl. ¶4; Stedem Decl. ¶16.  On or about July 6, 2018, counsel for the Fraser Parties informed The Bloom Firm that they viewed the LCA as binding and enforceable.  Knee Decl. ¶12.  On July 23, 2018, The Bloom Firm sent Defendants a demand letter on behalf of Steines.  Wertheim Decl. ¶5; Stedem Decl. ¶23.  On July 30, 2018, Defendants again responded to The Bloom Firm, reminding The Bloom Firm of its ethical obligations as Defendants' attorneys pursuant to the LCA, and stating that if The Bloom Firm insisted on taking a position adverse to its clients (Defendants), Defendants would have no choice but to seek disqualification based on the conflict of interest.  Wertheim Decl. ¶6.

Defendants have opposed, and continue to unequivocally oppose The Bloom Firm's representation in this lawsuit.  Wertheim Decl. ¶¶6, 7.  On October 1, 2018, when Plaintiffs served the lawsuit, Defendants immediately requested that The Bloom Firm withdraw.  *Id.* ¶7, Exh. A.  The Bloom Firm refused.  *Id.* ¶¶8, 9.

### B.   The LCA Established An Attorney-Client Relationship Between Defendants And The Bloom Firm

The LCA expressly established an attorney-client relationship between The Bloom Firm, on one hand, and the Defendants, on the other.  Stedem Decl. ¶7;

LCA, ¶6.[2]

Defendants and the Fraser Parties have, since the negotiation of the LCA, and at all relevant times, believed the LCA was genuine and enforceable, and established a legitimate attorney-client relationship with The Bloom Firm. Stedem Decl. ¶8. At no point did Defendants conceive or contemplate that by entering into an attorney-client relationship with The Bloom Firm, that The Bloom Firm's ability to practice law would be unlawfully restricted. *Id*.

C. **The Bloom Firm Obtained Confidential Information About Defendants Directly Related To Plaintiffs' Case**

Even after Ms. Bloom purported to terminate the LCA, Defendants and the Fraser Parties believed there to be a valid and binding attorney-client relationship established between them and The Bloom Firm. Stedem Decl. ¶17. They had shared confidential information with The Bloom Firm, and after The Bloom Firm had agreed to the LCA, including accepting a substantial amount for the first installment payment, they reasonably believed that The Bloom Firm would hold that information in confidence, and certainly not try to use it against Defendants. *Id*. ¶22. That confidential information included information related to the strategy and operations of the Home & Family show, confidential and privileged information regarding the Fraser Parties' and Defendants' legal strategies, and otherwise private personnel decisions and information relating to the individuals engaged to produce Home & Family, including Mark Steines. Stedem Decl. ¶¶19, 20; Knee Decl. ¶¶5, 6.[3]

As a result of sharing the aforementioned confidential information with Ms. Bloom and attorneys in her firm, Defendants maintained a good faith belief that by

---

[2] The specific language of the LCA has been filed concurrently under seal. Defendants are willing to waive the attorney-client privilege as to the LCA.

[3] The unredacted versions of Ms. Stedem's and Mr. Knee's declarations, which Defendants have filed under seal, detail additional confidential information. Should the Court need further detail, Defendants would be able to provide that information detail under seal.

DEFENDANTS' MOTION TO DISQUALIFY
CASE NO. 2:18-CV-09293-CJC-FFM

1  engaging and keeping Ms. Bloom on retainer, she would be an effective advocate to
2  protect their interests, and to consult with them on legal matters as they arose over
3  the LCA term.  Stedem Decl. ¶22.  Indeed, this lawsuit is the very type of matter
4  about which the Defendants would have consulted with The Bloom Firm because
5  this lawsuit falls within the broad scope of services defined in the LCA.  LCA ¶3;
6  Stedem Decl. ¶21.  Once The Bloom Firm entered into the LCA, Defendants
7  reasonably considered Ms. Bloom and the attorneys in her firm to be bound by the
8  duty of loyalty to them and not to divulge the confidential information she had
9  learned about them or to try and use that confidential information against them.
10  Stedem Decl. ¶22.

11       The Fraser Parties and Defendants would not have engaged and retained The
12  Bloom Firm if The Bloom Firm had not obtained this confidential information, as it
13  put The Bloom Firm in a unique position to provide legal advice to them and
14  Defendants.  Stedem Decl. ¶¶21, 22.

15  **III.   ARGUMENT**

16       **A.   The Legal Standard**

17       In the Ninth Circuit, state law governs motions to disqualify.  *See Rodriguez*
18  *v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ("By virtue of the district
19  court's local rules, California law controls whether an ethical violation occurred.");
20  *see also In re Cty. of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000) ("Because we apply
21  state law in determining matters of disqualification, we must follow the reasoned
22  view of the state supreme court when it has spoken on the issue.").  The Central
23  District applies the California State Bar Act, the California Rules of Professional
24  Conduct ("CPRC"), and related judicial decisions in assessing the standards of
25  professional conduct.  See C.D. Cal. L.R. 83-3.1.2.  The decision to disqualify
26  counsel is within the trial court's discretion.  *See Trone v. Smith*, 621 F.2d 994, 999
27  (9th Cir. 1980); *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20
28  Cal. 4th 1135, 1143–44 (1999).

**B.**  **The CRPC Prohibits The Bloom Firm From Taking An Adverse Position To Its Current Or Former Clients**

**1.**  **The Court Must Automatically Disqualify The Bloom Firm**

California law prohibits an attorney from representing a client if the representation is adverse to another current client in the same or separate matter. CRPC Rule 1.7(a), (b).[4]  Absent informed written consent, a lawyer must be automatically disqualified from acting as an advocate in one matter against a person the lawyer represents in the same, or some other matter, even if the matters are wholly unrelated.  *See Flatt v. Superior Court,* 9 Cal. 4th 275 (1994) ("Something seems radically out of place if a lawyer sues one of the lawyer's own present clients... [e]ven if the representations have nothing to do with each other, so that no confidential information is apparently jeopardized, the client who is sued can obviously claim that the lawyer's sense of loyalty is askew."); *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 919 (N.D. Cal. 2003) ("Simply put, an attorney (and his or her firm) cannot simultaneously represent a client in one matter while representing another party suing that same client in another matter."); *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 6 Cal. 5th 59, 84 (2018) ("A client who learns that his or her lawyer is also representing a litigation adversary … cannot long be expected to sustain the level of confidence and trust in counsel that is one of the foundations of the professional relationship.")

The Court must automatically disqualify The Bloom Firm because at the time it sought to represent Plaintiffs, it was concurrently in an attorney-client relationship with Defendants.  By virtue of the LCA, Defendants became clients of The Bloom Firm in July 2017.  Stedem Decl. ¶3; Knee Decl. ¶3; LCA ¶6.  This attorney-client relationship was expressly intended to last for a specified term of more than one year.  Stedem Decl. ¶12; LCA ¶2.   No doubt The Bloom Firm was

---

[4] On November 1, 2018, California's newly adopted CRPC went into effect.

DEFENDANTS' MOTION TO DISQUALIFY
CASE NO. 2:18-CV-09293-CJC-FFM

in contact with Plaintiffs prior to June 13, 2018, when it attempted to withdraw
from the LCA, as the following sequence of events makes clear:

- On May 30, 2018, Steines was removed as co-host of Home & Family. (FAC ¶50.)
- On June 13, 2018, The Bloom Firm attempted to unilaterally withdraw from the LCA. (Knee Decl. ¶10; Stedem Decl. ¶14, Exh. A.)
- On July 23, 2018, The Bloom Firm sent a demand letter, purporting to represent Steines against Defendants. (Stedem Decl. ¶23.)
- On September 20, 2018, The Bloom Firm filed this lawsuit against Defendants. (Complaint, attached to Notice of Removal, Dkt. No. 1.)

The Court should critically view The Bloom Firm's actions – as the timing of events indicates a high likelihood that The Bloom Firm began to take adverse actions against Defendants even before it attempted to sever the attorney-client relationship. *See State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*, 72 Cal. App. 4th 1425, 1432-33 (1999) (In determining whether the automatic disqualification rule applies, a court should evaluate the conflict of interest at the time it arose, not at the time a disqualification motion is adjudicated in court.)  The passage of only two weeks between Steines' removal as co-host of the show, and The Bloom Firm's attempt to withdraw from the LCA, can be interpreted as nothing short of a coordinated effort by The Bloom Firm to switch sides in this matter.[5]

Moreover, The Bloom Firm's conduct is not absolved by its attempt to sever the attorney-client relationship on June 13, 2018.  California courts have held that clients "cannot induce their adversary's attorney to switch sides midstream." *Netlist, Inc. v. SK hynix Inc.*, No. 816CV01605JLSJCGX, 2016 WL 8905079, at *4

---

[5] The Court has the power to require The Bloom Firm to disclose, under penalty of perjury, facts related to the sequence of events relative to its representation of Plaintiffs, including the timing of communications with Plaintiffs, when the communications with Plaintiffs began, when the representation of Plaintiffs was initiated, when drafts of the demand letter began, etc.  Defendants also reserve the right to conduct discovery into the timing of communications between Plaintiffs and The Bloom Firm.

DEFENDANTS' MOTION TO DISQUALIFY
CASE NO. 2:18-CV-09293-CJC-FFM

(C.D. Cal. Dec. 5, 2016) (quoting *Banning Ranch Conservancy v. Superior Court*, 193 Cal. App. 4th 903, 908 (2011)). This district has held, "[j]ust as the 'hot potato' doctrine provides that a lawyer cannot avoid automatic disqualification by abandoning a current client for a prospective one, [a law firm] cannot abruptly severe its relationship with an active client and then avoid disqualification based on the comparatively little work performed during the period of concurrent representation up to that point. *Netlist, Inc.*, 2016 WL 8905079, at *5 (C.D. Cal. Dec. 5, 2016) (citing *Flatt*, 9 Cal. 4th at 288); *see, e.g., California Earthquake Auth. v. Metro. W. Sec., LLC*, 712 F. Supp. 2d 1124, 1127-28 (E.D. Cal. 2010) 1127-28 (under California's automatic disqualification rule, firms have been disqualified even when they performed no legal services during the period of concurrent representation.)

This issue was directly addressed by a California appellate court in *Truck Ins. Exch. v. Fireman's Fund Ins. Co.*, in which a law firm represented the defendants (Fireman's Fund) in unrelated matters at the same time as it sought to represent the plaintiff (Truck Insurance). There, the firm sought to unilaterally withdraw from representing the defendant in the other matters, in order to represent the plaintiff against the same defendant, arguing the defendant was a "former" client and therefore it need not be automatically disqualified. *Id.*, 6 Cal. App. 4th 1052 (1992). The court squarely rejected this, stating, "[s]imply put, may the automatic disqualification rule applicable to concurrent representation be avoided by unilaterally converting a present client into a former client prior to hearing on the motion for disqualification? We answer [this] question in the negative and hold, consistent with all applicable authority, that a law firm that knowingly undertakes adverse concurrent representation may not avoid disqualification by withdrawing from the representation of the less favored client before hearing." *Id.* at 1057.

This is precisely what The Bloom Firm has attempted here and it must be

DEFENDANTS' MOTION TO DISQUALIFY
CASE NO. 2:18-CV-09293-CJC-FFM

1   disqualified.

2   **2.      Even If Defendants Are Considered Former Clients,**
          **Disqualification Is Warranted**
3

4        Even assuming The Bloom Firm lawfully severed the attorney-client

5   relationship with Defendants on June, 13 2018, The Bloom Firm must be

6   disqualified because its representation of Plaintiffs violates its continued duty of

7   loyalty and confidentiality to Defendants as former clients.  *Oasis West Realty, LLC*

8   *v. Goldman,* 51 Cal. 4th 811, 821 (2011) (the duty of loyalty continues after

9   termination of the attorney-client relationship to the extent that a lawyer may not

10  act in a manner that will injure the former client with respect to the matter involved

11  in the prior representation); *People ex rel. Deukmejian v. Brown*, 29 Cal. 3d 150,

12  155 (1981) (an attorney may not "at any time use against his former client

13  knowledge or information acquired by virtue of the previous relationship.")[6]  CRPC

14  Rule 1.9 states: "A lawyer who has formerly represented a client in a matter shall

15  not thereafter represent another person in the same or a substantially related matter

16  in which that person's interests are materially adverse to the interests of the former

17  client unless the former client gives informed written consent."  CRPC Rule 1.9(a)*;*

18  *SpeeDee Oil*, 20 Cal. 4th at 1146 ("[w]here an attorney successively represents

19  clients with adverse interests, and where the subjects of the two representations are

20  substantially related, the need to protect the first client's confidential information

21  requires that the attorney be disqualified from the second representation.")[7]

22

23

24  [6] The Court should note that although the Fraser Parties are not defendants in this action, they
    have an equally viable claim against The Bloom Firm for violating its duty of loyalty based on the
25  attorney-client relationship.  Plaintiffs' FAC is an overt attack on the Fraser Parties –
    unquestionably The Bloom Firm has acted in a manner that injures her former clients by filing
26  this lawsuit.

27  [7] See Bus. & Prof. Code § 6068(e) ("It is the duty of an attorney to… maintain inviolate the
    confidence, and at every peril to himself or herself to preserve the secrets, of his or her client.");
28  CRPC Rule 1.6 (an attorney may not reveal a client's confidential information without informed
    consent).

DEFENDANTS' MOTION TO DISQUALIFY
                                     CASE NO. 2:18-CV-09293-CJC-FFM

a.    **This Action Is Substantially Related To The Bloom Firm's Prior Representation of Defendants**

The question of whether a case bears substantial similarity to a prior representation is resolved by resort to the following three factors: (1) the legal questions posed; (2) the similarities between the two factual situations; and (3) the nature and extent of the attorney's involvement with the cases.  *H.F. Ahmanson & Co. v. Salomon Bros.*, 229 Cal. App. 3d 1445, 1452 (1991).  Once a substantial relationship is shown, the court will not inquire into the nature and extent of the confidences shared.  *See Elan Transdermal v. Cygnus Therapeutic Sys.*, 809 F. Supp. 1383 (N.D. Cal. 1992).

Plaintiffs' claims in this matter (for which no informed consent has been given) are substantially related to The Bloom Firm's prior representation of Defendants, which was defined by the scope of services in the LCA.  LCA ¶3.  The scope of the legal services was purposefully broad, and encapsulates legal situations, such as the claims brought by Plaintiffs against the television show, Home & Family.  Stedem Decl. ¶24.

Had the parties intended to limit the scope of what the LCA covered, they could have done so, but they did not.  The Bloom Firm knew it was entering an expansive role as counsel to Defendants – a role that could implicate advising Defendants regarding matters such as those raised by Plaintiffs.  The LCA's plain terms control the analysis and any ambiguity must be interpreted in Defendants' favor.  See *California Earthquake Auth.*, 712 F. Supp. 2d at 1129 ("Attorneys have a paramount obligation to honor their contractual promises to clients" and ambiguities in contracts between attorneys and their clients should be "strictly interpreted against the attorney.")[8]  Consistent with the scope of the LCA,

---

[8] *See Morrison & Foerster LLP v. Momentous.ca Corp.*, No. C–07–6361 EMC, 2008 WL 648481, *8–9 (N.D. Cal. March 5, 2008) (recognizing that ambiguities in contracts between attorneys and their clients should be "strictly interpreted against the attorney" and such contracts should be construed in the light most "favorable to the interests of the client.")

DEFENDANTS' MOTION TO DISQUALIFY
CASE NO. 2:18-CV-09293-CJC-FFM

1  Defendants could (and would) have consulted The Bloom Firm on how to defend

2  against Plaintiffs' legal claims.  Stedem Decl. ¶¶22, 24.

3      As to the third prong, and most egregiously, The Bloom Firm has sat on both

4  sides of the equation, collecting confidential information from Defendants, and now

5  attempting to use that information against Defendants.

6          **b.   The Bloom Firm Must Be Disqualified Because It
           Obtained Confidential Information Related To This**

7          **Case**

8      The Bloom Firm's representation of Plaintiffs must also be disallowed

9  because to do so would allow The Bloom Firm to use Defendants' confidential

10  information against Defendants in this case.  CRPC Rule 1.9(c) provides: "A

11  lawyer who has formerly represented a client in a matter … shall not thereafter…

12  use information protected by Business and Professions Code section 6068,

13  subdivision (e) and rule 1.6 acquired by virtue of the representation of the former

14  client to the disadvantage of the former client…." *Id*. Rule 1.9(c).

15      The Bloom Firm obtained confidential information about Defendants and the

16  Fraser Parties, including information related to personnel issues on Home & Family

17  – issues that are directly related to Plaintiffs' claims in this case.  Stedem Decl. ¶19;

18  Knee Decl. ¶¶5, 6.[9]  While The Bloom Firm may argue that any such information

19  was learned prior to entering the LCA, this argument does not shield it from its

20  ethical duty of confidentiality toward Defendants with respect to this information.

21  As soon as The Bloom Firm was retained by Defendants, the confidential

22  information it obtained from Defendants became client secrets.  State Bar of

23  California, Standing Committee on Professional Resp. and Conduct, Formal Opn.

24  No. 2016-195, p. 2-3 ("'client secrets' include not only confidential attorney-client

25  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26  [9] Although not germane to Plaintiffs' claims, The Bloom Firm has already breached its duties by
   revealing confidential information (the specifics of which Defendants counsel would be happy to

27  discuss *in camera*).  The Bloom Firm is duty-bound to preserve at "every peril" Defendants'
   client secrets and to abide not only by the duty of confidentiality, but any other confidentiality

28  clauses to which it agreed.  If The Bloom Firm intends to include further confidential information
   in any filing, there is a procedural mechanism that it should follow – *i.e.*, filing under seal.

DEFENDANTS' MOTION TO DISQUALIFY
CASE NO. 2:18-CV-09293-CJC-FFM

communications, but also information about the client that may not have been obtained through a confidential channel."); L.A. Cty. Bar Assn. Formal Opn. Nos. 267 & 386 (stating that the duty of confidentiality has been applied even when the facts the attorney obtained are already part of the public record or where there are other sources of information.)

That any information may have been learned by The Bloom Firm prior to signing the LCA does not change its duty of confidentiality.  In similar scenarios, California courts have disqualified law firms where a mediator or a judge, who previously engaged in settlement communications between parties (but was not at the time a lawyer for any of the parties), later joined a firm representing those parties – in each case, the firm was disqualified, even if an ethical wall was set up. *Nevarez v. Foster Farms*, No. F070316, 2016 WL 1020758, at *4 (Cal. Ct. App. Mar. 15, 2016), reh'g denied (Apr. 6, 2016) (affirming disqualification of plaintiff's counsel where they consulted with a third-party consultant, who had served as a mediator for the defendant in a separate case, because the mediator had learned confidential information about defendants as the mediator in defendants' prior case and the conflict was imputed to plaintiff's counsel.); *Poly Software Intern., Inc. v. Su*, 880 F. Supp. 1487 (D. Utah 1995) (disqualifying a plaintiff's attorney and his law firm because the lawyer had acted as a mediator in a prior, "substantially factually related matter" in which parties to the current case had been involved.) (cited by *Cho v. Superior Court*, 39 Cal. App. 4th 113, 125 (1995) ("When a litigant has bared its soul in confidential settlement conferences with a judicial officer, that litigant could not help but be horrified to find that the judicial officer has resigned to join the opposing law firm — which is now pressing or defending the lawsuit against that litigant.").  The Bloom Firm's conduct is analogous to these cases, where in the course of discussing a previous matter with Defendants, The Bloom Firm learned confidential and sensitive information, the basis of which was used to resolve the prior matter.  The Bloom Firm, just like a mediator in *Nevarez*,

- 13 -

is prohibited from using that confidential information against Defendants in a later case, especially where they subsequently enter into an attorney-client relationship with the party from which the confidential information is obtained, as is the case here.[10]

In fact, The Bloom Firm would have to be disqualified even if no confidential information was given.[11]  For purposes of disqualification motions, courts will assume that during the course of the former representation, confidences were disclosed to the attorney bearing on the subject matter of the representation and will not inquire into their nature and extent.  *Civil Service Comm'n v. Superior Court*, 163 Cal. App. 3d 70, 80 (1984) ("[T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action [where] the attorney previously represented him, the former client.") (internal quotations omitted).[12]  This is because the courts have recognized the dangers of swearing matches and wish to avoid a scenario in which a former client would be forced to disclose confidential information in order to prove what its attorneys actually know.  *Elan Transdermal*, 809 F. Supp. at 1388; *Benasra*, 123 Cal. App. 4th at 1189 (actual disclosure of confidences by a former attorney during

---

[10] California recognizes a "mediation privilege" which requires that all communications shared during mediation remain confidential and are inadmissible at trial.  Cal. Evid. Code §1119(c) ("All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential."); *Olam v Congress Mort. Co.*, 68 F. Supp. 2d 1110 (N.D. Cal. 1999) (California's mediation confidentiality statutes apply in federal courts when a question of state law is at issue.)

[11] Of course, Woody Fraser, WFE and Defendants had shared confidential information with The Bloom Firm.  Stedem Decl. ¶19; Knee Decl. ¶¶5, 6.  Had they not, Woody Fraser and WFE would not have entered into the LCA. *Id*. ¶22.

[12] See also *David Welch Co. v. Erskine & Tully*, 203 Cal. App. 3d 884, 891 (1988) ("the actual use or misuse of confidential information is not determinative; it is the possibility of breach which controls."); *Benasra v. Mitchell Silberberg & Knupp LLP*, 123 Cal. App. 4th 1179 (2004) review denied (a breach of attorney's duty of loyalty based on violation of CRPC barring representation of parties with conflicts of interest occurs whether or not confidences are actually revealed in the adverse action; *Elan Transdermal*, 809 F. Supp. at 1388) (unnecessary for former client to establish that lawyer acquired material confidential information during the former representation if the two matters are substantially related and the current representation is adverse).

litigation is not required to support an action for the attorney's breach of loyalty to the former client because "[t]he breach occurs not when the attorney steps into court to represent the new client, but when he or she abandons the old client.… [O]nce the attorney accepts a representation in which confidences disclosed by a former client may benefit the new client due to the relationship between the new matter and the old, he or she has breached the duty of loyalty.")

The Bloom Firm's representation of Plaintiffs puts Defendants in the untenable position of being forced to file a motion against their prior counsel that risks disclosure of confidential and privileged communications with prior counsel, in order to prove that The Bloom Firm violated its ethical duties.  In order to avoid this catch-22, Defendants have filed certain documents under seal to protect their confidential and privileged information.  However, the Court need not conduct a factual inquiry to determine that confidential communications took place – it is presumed from the attorney-client relationship as established by the LCA.  *Elan Transdermal*, 809 F. Supp. at 1388; *Benasra*, 123 Cal. App. 4th at 1189.

Notwithstanding the above, confidential communications did take place.  The Fraser Parties engaged and retained The Bloom Firm for the express purpose of seeking legal advice; they did so with the expectation that their and Defendants' secrets would be safe with their attorneys.  Knee Decl. ¶7; Stedem Decl. ¶¶21, 23.  Under no circumstances would Defendants have retained The Bloom Firm if they knew The Bloom Firm would use their and Defendants' secrets against them.  *Id*.

### 3.   Knowledge of Defendants' "Playbook" And Strategies Gives Plaintiffs' An Unfair Advantage

In addition to the specific confidential information The Bloom Firm obtained, The Bloom Firm should also be disqualified because its knowledge of Defendants' "playbook" and litigation strategies gives it an unfair advantage.  Knee Decl. ¶7; Stedem Decl. ¶19.  California federal courts have recognized the distinct conflict that arises when an attorney seeks to litigate against a former client after it

1  obtained "special insights" into the former client's "playbook" or litigation

2  strategies.  *LeapFrog Enterprises, Inc. v. Epik Learning, LLC*, No. 16-CV-04269-

3  EDL, 2017 WL 2986604, at *12 (N.D. Cal. Feb. 23, 2017) (disqualifying defense

4  counsel because its previous representation of plaintiff led to knowledge of

5  plaintiff's "playbook," which would have given it an unfair advantage when

6  negotiating settlements against plaintiff); *Levi Strauss & Co. v. Abercrombie &*

7  *Fitch Trading Co.*, No. C 07-03752 JSW, 2007 WL 3203056, at *1 (N.D. Cal. Oct.

8  29, 2007) (disqualifying plaintiff's counsel because one of its attorneys previously

9  served as in house counsel to defendant, had been involved in defendant's legal

10  strategy and had learned "about similar factual situations and legal questions" of the

11  defendant.)  Here, The Bloom Firm obtained such information and now attempts to

12  use it against Defendants, creating an unfair advantage for Plaintiffs at the expense

13  of Defendants' confidential communications to The Bloom Firm. Stedem Decl.

14  ¶¶19, 24.

15      **C.    Even Absent An Attorney-Client Relationship, The Bloom Firm**
16              **Must Be Disqualified**

17      Assuming, *arguendo*, no attorney-client relationship was formed, The Bloom

18  Firm still owes a duty of confidentiality to Defendants in the same way it would to

19  prospective clients, such that adverse representation in this case is inappropriate.

20      CRPC Rule 1.18 provides that a duty of confidentiality to a prospective client

21  arises, even when no lawyer-client relationship ensues, if the client disclosed

22  confidential information during the consultation for purposes of assessing the

23  retention.  CRPC Rule 1.18 (b) ("Even when no lawyer-client relationship ensues, a

24  lawyer who has communicated with a prospective client shall not use or reveal

25  information protected by Business and Professions Code section 6068, subdivision

26  (e) and rule 1.6 that the lawyer learned as a result of the consultation."); *SpeeDee*

27  *Oil*, 20 Cal. 4th at 1147-48 ("The fiduciary relationship existing between lawyer

28  and client extends to preliminary consultations by a prospective client with a view

1  to retention of the lawyer, although actual employment does not result."); L.A. Cty.

2  Bar Ass'n, Formal Opn. No. 506 (an attorney has a duty to a potential client not to

3  disclose confidential information received in an initial consultation.)

4       As mentioned, but for The Bloom Firm's knowledge of the confidential

5  information specified above, the Fraser Parties would not have engaged The Bloom

6  Firm.  Should there be any doubt about the enforceability of the LCA, Defendants

7  should be treated in the same way the law treats prospective clients – particularly

8  since The Bloom Firm accepted the first installment of the retainer.

9       **D.**   **The Case Is In Its Early Stages, So Plaintiffs Will Not Suffer Any**
10       **Undue Burden or Prejudice**

11       Plaintiffs will not suffer any undue burden or prejudice if The Bloom Firm is

12  disqualified.  *See River West, Inc. v. Nickel*, 188 Cal. App. 3d 1297, 1309 (1987) (a

13  motion to disqualify may be denied if the tainted attorney or firm submits evidence

14  of an unreasonable delay by the former client in making a motion, resulting in

15  extreme prejudice to the current client); *See also Henriksen v. Great American*

16  *Savings & Loan*, 11 Cal. App. 4th 109, 112 (1992) (rejecting arguments of

17  prejudice and financial hardship and affirming disqualification even though

18  litigation had proceeded for two and a half years and the matter was ready for trial).

19       Here, there has been no delay.  Defendants immediately responded to The

20  Bloom Firm and requested that it not take any adverse positions to them on the

21  basis of the LCA, and requested The Bloom Firm to withdraw as counsel once the

22  lawsuit was filed and served.  Wertheim Decl. ¶¶4, 6, 7.  *See Image Technical*

23  *Servs. Inc. v. Eastman Kodak Co.*, 820 F. Supp. 1212, 1217-18 (N.D. Cal. 1993)

24  (finding that a year's delay in bringing a disqualification motion "was not extreme,

25  prejudicial, intentional, [or] a severe burden; nor did the delay allow [the moving

26  party] any tactical advantage").

27       Moreover, because this case is still in its infancy, Plaintiffs will not suffer

28  any prejudice, let alone extreme prejudice, if they are required to find new counsel.

1    The pleadings are still in dispute and the parties have not exchanged Rule 26

2    disclosures or responded to any discovery.  There is ample time to conduct

3    discovery and prepare the case for trial.  *See In re Complex Asbestos Litig.*, 232 Cal.

4    App. 3d 572, 579-600 (1991) (finding that even a disqualification motion on the

5    eve of trial need not "cause any prejudice, much less extreme prejudice," where it

6    does not cause any substantial delay in the proceedings).  Consequently, Defendants

7    have timely filed the current motion and Plaintiffs will not suffer prejudice,

8    "extreme" or otherwise.  Of course, even if Plaintiffs were to suffer prejudice by the

9    disqualification of The Bloom Firm, such prejudice is not "a relevant

10   consideration" because of the prejudice to Defendants in allowing The Bloom Firm

11   to represent Plaintiffs in this litigation.  *River West, Inc.*, 188 Cal. App. 3d at 1305.

### IV.   <u>CONCLUSION</u>

13        For the foregoing reasons, the Court should disqualify The Bloom Firm from

14   representing Plaintiffs in this lawsuit.

15   Dated:          December 5, 2018          TIMOTHY J. LONG
16                                            MICHAEL WERTHEIM
                                              Orrick, Herrington & Sutcliffe LLP

18                                            By: */s/ Timothy J. Long*
                                              _____
19                                            TIMOTHY J. LONG
                                              Attorneys for Defendants
20                                            CROWN MEDIA UNITED
                                              STATES, LLC, CROWN MEDIA
21                                            HOLDINGS, INC. AND CITI
                                              TEEVEE, LLC

DEFENDANTS' MOTION TO DISQUALIFY
CASE NO. 2:18-CV-09293-CJC-FFM